May it please the Court, my name is John Belcher. I represent the appellant Kelly Brimberry, who is the beneficiary of a life insurance policy that was issued under ERISA by Prudential. This is a very clean case in terms of interpreting a contract as a matter of law. It presents de novo review. The standard under ERISA is that even an unambiguous exclusion may be unenforceable unless it is sufficiently clear, plain, and conspicuous to overcome a layperson's reasonable expectations, Peterson v. American Life. The question here is not does Prudential have a reasonable interpretation. The question is do they have the only reasonable interpretation. And the first place that we go is to the policy, and the first place... You read something that talked about an exclusion. I don't understand. Is there an argument about excluding anything or an argument about what is actually covered? Well, Your Honor, we believe that in terms of page 34, which is percent of your amount of insurance, life, 100 percent, that that is a coverage grant. And in fact, the Hyatt case, which is a 1944 case but is still viable, had almost identical facts in that on the cover page, and although it was an ink stamp, it said you have double indemnity for accident. On page 5, it took away that grant and said it has to be a violent accident or it was more restrictive. And what the Ninth Circuit held was the average layman knows what double indemnity means and that putting it on page 5 wasn't sufficient. And in fact, what they specifically held, Your Honor, was what they should have said was on the cover page as restricted and defined on page 5 hereof. So the issue is in terms of the percent of your amount of insurance. We cited Wikipedia. We cited every dictionary on what the word amount means. I'm going to pay the amount of your bill. How much is that? Fifty percent of the bill. The amount is commonly understood as the entire amount. And page 34 says the amount payable depends upon the type of loss as shown below. All benefits are subject to the limits below, directing you below. And it says percent of your amount of insurance, life, 100. This is also overlaid by the fact that multiple cases, including the Hyatt case, have found that the common understanding of double indemnity is double indemnity of the entire face amount of the policy. Now, in this particular case, the district court went to the table of contents. And if you go to the table of contents, there's a schedule of benefits that's listed at 5. Schedule of benefits of what? It's a life insurance policy. You then go further down and you go to basic accidental death and dismemberment coverage, 33. Then the next one is additional benefits under basic accidental death and dismemberment coverage, 36. If this were the only page that you were presenting to an 11-year-old or a law clerk or an attorney or a layman, they would reasonably understand that if I don't want to have to read all 46 pages of this policy in order to understand what my accidental death benefit is, that I would go to page 33. That you would not have a separate listing for basic accidental death and dismemberment coverage and additional benefits if they had already been chart, they list life, both hands and feet and so on, as the percent of your amount of insurance. Now, the district court found that, in fact, the portion relied upon by prudential at page 8 that you would be unambiguously directed to that when you see schedule of benefits. But there's a problem with that. The problem is that in terms of this, quote, schedule of benefits that is referenced in the table of contents, there isn't a schedule of benefits at page 5, 6, 7, or 8. The only place in the policy in which they list sight in one eye, hearing in both ears, and so on, is at page 34. So even if you followed prudential's reasoning, and you looked at the policy, and you said, well, is this the schedule of benefits for accidental death, and you went to page 5, you wouldn't find any of these listed benefits. That is the only place that they're found in the policy. So the question is, is this a coverage grant? Percent of your amount of insurance, life, 100 percent. Yes, that is a coverage grant. Now, in terms of taking that coverage grant away, what the district court and prudential would have us do is to work backwards in the policy 26 pages to page 8, which is what they rely upon. And what it says at the bottom of page 8 is, for this purpose only, that amount will be the amount as determined above. So in other words, they don't say the amount is only the basic amount. The amount is only the amount found on page 5. It says it is the amount as determined above for this purpose only. Well, what's above? Well, when you go above, what's immediately above is the optional coverage, the all the way to page 5 where it said basic coverage. It said as described above. And there's another important thing in terms of use of the word, your amount of benefits, that at pages 6 and 7, that noun phrase in various formulations is used repeatedly to describe how the insured can increase your amount of benefits. So your amount of benefits doesn't stay as the basic amount of benefits if you give them evidence and you submit this application and they approve and increase, in quote, your amount of benefits. And in terms of the case law here, in the Hyatt case, we don't know how long the policy was, but we know that the cover page and the exclusion was five pages away. In this particular case, even a law clerk or a fast reader, it would take an hour or more to go through this policy. And the problem that Prudential has here is that their suggestion is, is that page 34 is overridden by page 8, which is not normal in terms of what lay people do. And so in terms of the context of the policy as a whole and the placement and format of the disclaimer language, the case law is consistent that even if you have an exclusion that is in and of itself unambiguous, that that exclusion is not enforceable if it's internally inconsistent within the policy or if its placement is such that the insured has the obligation to conduct an arduous search. That was the So one thing that I think, in terms of having problems with this policy and having it be hard to read, is the fact that the district court misread the policy. And in the written opinion from the district court, they said, well, Brimberry and appellants are writing out the language that your accidental death benefit is only the basic benefit. But that language doesn't appear in the policy, and it should have. This is Prudential. This is a multibillion-dollar insurance carrier. And had that been in the policy, I would agree with the district court that that was unambiguous. The district court misread it. What the policy said was, for this purpose only, that amount will be calculated as above, and as above included both the I'd like to save the rest of my time for rebuttal, if I may. Thank you. May it please the Court. My name is Amanda Sonnenborn, and I'm here on behalf of Prudential. Counsel spoke a lot about the policy and read you a lot of different provisions in the policy. The one piece he didn't read to you is the part that appears on page 8 that unequivocally states, when you're discussing basic accidental death and dismemberment coverage, quote, it is an amount equal to the amount for which you're insured under the cap B basic, cap E employee, cap T, cap term, cap L life, cap C coverage. It says that very clearly in the first line where it describes what the benefits are. The heading, as the district court correctly pointed out, is what is the schedule of benefits. And under the AD&D language, there's no question that the policy in the very first statement as to what those benefits are states it's the amount for which you're insured under the basic employee term life coverage, which is precisely the amount that Prudential paid out here. In order to give the case context, I think it's important to understand how we got here. Prudential filed this matter originally, and that's why you see that we are the employer plan sponsor and the counter defendant or counter plaintiff appellant in this case about who was entitled to the benefits. And so Prudential brought the case in court to have that decided, whether or not the employer was entitled to the benefits or the appellant here. In the course of that proceeding. That was apparently resolved. That issue has been resolved. And that Ms. Brimberry is entitled to the benefits. That matter was resolved between the parties. There was no conclusion, in fact, that it was her by the judge that was entitled to the benefits. Importantly, and to that exact point, at no point in time did that employer claim that what they had contracted with Prudential, remember this is an ERISA plan. So the entity that created the plan document that purchased the coverage for its employees, which Ms. Brimberry's husband never paid for any part of, it was part of his the argument that the appellant is making here. They sought these benefits. They applied for them. They said they were the rightful recipient and beneficiary under the policy, but that they never claimed that they were entitled to these additional benefits that the appellant seeks here. For these reasons, the district court correctly determined that it was not only reasonable, but the correct and unambiguous interpretation of the policy to determine that Prudential properly paid Ms. Brimberry the $375,000 that is due under the AD&D coverage. In addition to the $375,000 that is due under the basic term life and the $625,000 that is due under the optional coverage. This isn't a circumstance where we are arguing there's an exclusion. Oftentimes, if an insurer is appearing before you, there may be a dispute about whether or not a certain loss or coverage is covered by an AD&D policy. That is not the circumstance. The question before you, as Your Honor correctly identified, is what is the coverage that was provided? And without question, the schedule of benefits leaves no question that the coverage that was provided was precisely the amount Prudential had sought to pay here and which the district court correctly determined was due. In making that analysis, the district court thoroughly reviewed the policy, and in fact, when looking at the page that the plaintiff appellant, counter plaintiff appellant points to, noted that in the back on page 34, what it's talking about is the percent of your amount of insurance. Frequently in the briefing in this case, he keeps quoting your amount of insurance, leaving off that introductory word, which is percent of your amount of insurance. That language that's quoted is there is intended to identify how much coverage you get for a particular type of injury. If you die, you receive 100% of the AD&D benefit. If you lose speech or lose sight of an eye, you lose a different percentage. It's not, in fact, intended to identify the coverage that is due, which is described earlier in the policy. The court correctly determined that there's no question, even if you start at the beginning of the policy and you work your way through, that the only definition that is provided for what coverage is due under the AD&D is that section that I previously described on page 8, where it clearly and unambiguously states that your policy coverage is entitled to the amount of your basic term life coverage. And that's precisely... Where does it show what your basic term life coverage is? So if you turn, Your Honor, to the beginning of the policy and you look at page 5, it describes what the amount of the insurance is. This is a typical ERISA life insurance benefit where it's tied to the amount of earnings at a particular employer. And so, for example, for everyone who's an employee of Franklin Templeton Life, they don't spell out what your particular salary is. It may change from year to year, but they articulate the way that you go about calculating what your coverage is there. And that's precisely what we paid out here. What Prudential has admitted there is due is precisely the amount that is calculated pursuant to that basic term life coverage. And again, the employer entity that contracted with Prudential to provide this policy, who was a party to this proceeding, never argued that anything more was due, even though they were trying to lay claim to things. So if you look back and you consider the fact that this is an ERISA plan, and those benefits were provided and negotiated by the employer for purposes of providing to an employee, it's important to remember this is an ERISA 502A1B case, so a case that's a breach of contract case. This isn't a case where we're looking to equitable issues or other things that often may become before the court. The pure question is whether or not the plan document, which is before you, and which the district court unambiguously states that the amount of insurance is the amount provided for on page 8, whether or not that is clear and unambiguous. Can I ask you, just so that I understand, so the policy is purchased by the employer? Correct. And the employer, in effect, the employee is told this is what we've purchased for you? Correct, Your Honor. So this would be a case where a fairly sophisticated entity, i.e., the employer, was purchasing the policy and not some layman? Correct, Your Honor. This is not an individual life insurance case where I would go to a broker and purchase life insurance on behalf of myself or my family. This is a case where the benefit was provided pursuant to EBRSA by the employer to the employees in this context. So, in a sense, talking about it, what a reasonable person, layman, i.e., would read. I mean, I'm dizzy from all the paragraphs and pages. How they would read it is largely irrelevant. Correct, Your Honor. I think if you look, and that's why, again, we think that the court correctly determined that the Hyatt case, which is the case that counsel largely relies on, has no impact on this case. Again, that was an individual insurance policy that was purchased. It far predated EBRSA and EBRSA policies and EBRSA plans and all those concepts. Are there any cases in California that talk about the difference between a purchaser of an insurance policy being an individual and being an EBRSA-covered organization? No, Your Honor. In fact, there are no other cases that talk about this kind of issue that's specifically addressed in this case, which is why I think counsel's looking to case law from a long time ago. It's a fairly unique issue that's being presented to you here today in terms of the argument that's being made by the plaintiff. Many times when you're arguing for coverage, you're arguing about the facts of the case, whether or not an individual, like I said, met an exclusionary category for purposes of AD&D, or whether or not if the long-term disability cases that you frequently get, whether or not those facts meet a standard that a particular insurer determined was or was not covered. Here we're arguing about the precise terms of the contract itself. And in the Hyatt case, if you look at that, as counsel acknowledged, on the face of that policy, it was stamped the words double indemnity. There's nothing in this policy anywhere that speaks to the words double indemnity. In fact, there's nothing in the policy that states that the value of an AD&D policy will be both the optional term life plus the basic life. Those words do not appear anywhere in the contract. In fact, the only terms that appear that speak to that amount of your benefit is the one that says it shall be the amount of the basic term life coverage. So counsel is reading into the policy terms that do not exist there. In the face of clear and unambiguous language on page 8, which you come to first as you were reading the contract and which identifies the schedule of benefits and which he did not dispute what the amount was that we paid in terms of the basic term life, there's no dispute that. And we looked at that language at the beginning on page 5 to determine that amount. There's no dispute about the optional term life, which you turn to the next page and we paid about. It's only when you turn to page 8 that suddenly he argues there's an ambiguity. But in fact, without question, the language is clear and unambiguous on its face that what we have agreed to pay is the basic term life coverage. That is what the employer negotiated with us to provide for the employees, and that's in fact what we provided pursuant to the ERISA plan. All right. Thank you, counsel. Thank you. In all deference to counsel, that is not the law. The Ninth Circuit has never held that ERISA policies are not subject to exactly the same standard of ambiguity from the perspective of a layman. And I'm going to read this very slowly. I didn't think she said she had. I don't think she said that. But she said there was, I thought in response to Judge Reinhart, she said there was no Ninth Circuit case. In Peterson v. American Life and Health Company, this is an ERISA case, 48F3404411, Ninth Circuit, 1995. Under the reasonable expectations doctrine, as a matter of federal common law governing ERISA contracts, even an unambiguous exclusion may be unenforceable unless it is sufficiently clear, plain, and conspicuous to overcome a layperson's reasonable expectations. The employees have the option of buying into this plan and pre-tax money is put towards it. Her statement under ERISA that the employees don't have any skin in the game is completely false. It is an optional benefit that you pay for. And in this particular case, not only is it an optional benefit, but it started off as a basic benefit, and they take X amount of dollars out of your salary, or you can get increases. So the idea that there isn't a relationship with the ultimate beneficiaries in terms of how this works under ERISA is inaccurate. What counsel would do is have you go to page 8 of the policy. And at page 8, the portion she's reading says, in all caps, BASIC ACCIDENTAL DEATH AND DISMEMBERMENT COVERAGE. That's in all caps on page 8. We now go back to the table of contents. Does the table of contents direct us to page 8? No. The table of contents directs us BASIC ACCIDENTAL DEATH AND DISMEMBERMENT COVERAGE, page 33. It doesn't direct the insured to page 8. And when we get to page 33, we go to the chart, percent of your amount of insurance. And by the time you've gotten to this part of the policy, we started with the basic $325,000 policy, and the insured has now purchased more. And she would have you, when the table of contents is directing you to page 33, go to page 8. Why? Why would an insured do that if the insured goes to the table of contents? And what she doesn't dispute is this is an additional benefit. This is accidental death. If you die, you get your basic benefit. The benefit amount payable under accidental death and dismemberment coverage. And here at 33, in all caps, BASIC ACCIDENTAL DEATH AND DISMEMBERMENT COVERAGE. So somebody going to the table of contents, looking for BASIC ACCIDENTAL DEATH AND DISMEMBERMENT COVERAGE, would reasonably go, and here it is. And they're like, well, what extra stuff do I get if there's an accident? Percent of your amount of insurance, not basic insurance, not a portion of it, life, 100. So the problem here is that there are two large captioned areas, both of which are labeled BASIC ACCIDENTAL DEATH AND DISMEMBERMENT COVERAGE. She's relying upon page 8. But that isn't where the insured is directed in the table of contents. And what she didn't explain in her argument was it does say an amount equal to the amount which you are insured under the basic term life coverage. But she doesn't explain why the next sentence is in there. For this purpose only, that amount will be the amount as determined above. What's determined above is both the BASIC and the optional coverage. And what's immediately above is the optional coverage. It could have been very easily written to say it's the amount of the BASIC coverage period. And so in terms of this particular policy. I'm sorry. Where were you reading that from? This is in the record at 300. It's page 8 of the policy. Page 8, yes. That it says an amount equal to the amount for which you are insured under the BASIC employee term life coverage. Then the next sentence is for this purpose only, that amount will be the amount as determined above. They don't say as determined on page 5. They say as determined above. And what's determined above, if you go to page 6 and 7, is repeated references to your amount of insurance. Which is the extended coverage, the optional coverage beyond the BASIC. And the term, your amount of insurance, as they talk about extending it. If you request an increase, this is on page 7, you must give evidence of insurability. The amount of your insurance will be increased. So what they're talking about here is a process by which the amount of your insurance is increased. And that term is used six different times on pages 6 and 7. So the question here is not, in isolation, does she have language that if it were read by itself, would exclude coverage? The question is, are there internal inconsistencies here? And under the standard of ERISA, under the Peterson case, where this has to be understandable to a layman. And remember the purpose of ERISA. ERISA was designed to be more protective of people who are putting their loved ones and their savings into the ERISA policies. So the argument that the question that I had, and maybe the Peterson case answers it, is the employer is purchasing, is doing all the negotiating, presumably carefully reading the terms of the policy, which I doubt that most laymen would read in this particular context. And do we know what description, instead of talking about a fiction, about the insured in this context reading the policy, I have insurance through the government, but I never read what the policy said. Instead of talking about it in terms of this hypothetical, that's probably fictional as well, do we know what the employee who was presumably paying for this was actually told? What we know is... I'm sure that if he listened to your description, he would be dizzy. I'm not being critical, I'm just trying to be realistic. You know, I represent a widow. The person who purchased this was dead. But I think our point is... Died under, as long as you want to get into... Right, but our point is... Died under circumstances which might even suggest that it might have been suicide. Well, it's conceded that it was not suicide. I know it was conceded, they didn't dispute it, but as I read through all of this, I thought, it could be he was told that he was under investigation, I don't know the exact facts. Well, we were ready to mitigate it, and you narrowed it down to this issue. It's good that you narrowed it down. But what I think is important here, Your Honor, is to understand that the argument that the negotiation is between the carrier and the employer, and that therefore the insureds don't have to have an understandable document isn't true. It's their money. Their money, even though it's the employer that is paying it, comes out of their paycheck. So the point is that at some point, maybe he should have read it. And even if he didn't read it, whether he did or not, if the carrier does not unambiguously exclude the coverage, that because he had paid for the policy, that's on them. And in terms of all of the case law about not only having it conspicuous, plain and clear, but also understandable, that's the policy behind it. The policy is that they can't take the money and then not draft the policy to clearly tell you that you don't get the money. Okay, thank you, counsel. We're well over time. The case just argued will be submitted. The court will stand in recess for the day. All rise.
judges: Reinhardt, Wardlaw, Korman